IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| SHIRLEY P. CABBAGESTALK, ) | Civil Action No. 3:09-1693-MBS-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL SECURITY ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

Plaintiff applied for DIB on March 8, 2006, alleging disability as of January 1, 2002. Plaintiff's application was denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held September 19, 2008, at which Plaintiff and a vocational expert ("VE") testified. In a decision dated December 9, 2008, the ALJ found that Plaintiff was not disabled as she was able to perform her past relevant work as an insurance salesperson. The ALJ also made an alternative finding that Plaintiff was not disabled because she could perform other work existing in significant numbers in the national economy.

Plaintiff was 58 years old at the time of the ALJ's decision. She has a high school education with past relevant work as certified nurse's assistant and insurance salesperson. (Tr. 21).

The ALJ found (Tr. 12-22):

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2009.

2. The claimant has not engaged in substantial gainful activity since January 1, 2002, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, osteoarthritis, gouty arthritis, diabetes mellitus, obesity, hypertension, and renal insufficiency (20 CFR 404.l520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the following residual functional capacity: she can lift or carry up to 20 pounds occasionally and 10 pounds frequently; and she can only occasionally stoop, twist, crouch, kneel, climb stairs or ramps, crawl, balance, and climb ladders, ropes, or scaffolds.

6. The claimant is able to perform her past relevant work as an insurance salesperson, as actually performed and as generally performed (20 CFR 404.1565).

7. The claimant was born on May 16, 1950 and was 51 years old as of her alleged disability onset date, which is defined as an individual closely approaching advanced age (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. The claimant has acquired work skills from past relevant work that are transferable to work within her residual functional capacity. (20 CFR 404.1568).

10. Even if the claimant were to be unable to perform her past relevant work, considering her age, education, work experience and residual functional capacity, she has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1560(c), 404.1566 and 404.1568(d)).

2

> 11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2002 through the date of this decision (20 CFR 404.1520(g)).

On May 19, 2009, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (Tr. 1-6). Plaintiff then filed this action in the United States District Court on June 25, 2009.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

**MEDICAL EVIDENCE**

Plaintiff was treated from 2002 to 2008 by Dr. Pickens Moyd (a family practitioner) for various impairments including hypertension, diabetes, and back pain. In September 2002, he diagnosed her with hypertension and instructed her to lose weight. Although Dr. Moyd occasionally found Plaintiff's hypertension and diabetes to be under good control (Tr. 350, 371, 451, 488), he routinely noted that one or both were poorly controlled (Tr. 387, 380, 398, 445, 472, 477) and that Plaintiff was often non-compliant with her medications or stopped taking her prescribed medications on her own. Tr. 373, 376, 380, 400, 402, 472.

Plaintiff complained to Dr. Moyd about swelling and pain in her feet. Dr. Moyd diagnosed Plaintiff with gout and osteoarthritis. See Tr. 336, 345, 356, 370, 396, 398, 400, 451, 477, 494. He noted that a past x-ray revealed osteoarthritis in Plaintiff's right ankle. Tr. 398. He prescribed Prednisone and administered shots of Depo-Medrol for Plaintiff's gout. Tr. 345, 400, 451. In June 2006, it was noted that Plaintiff had left foot tenderness with some increased heat. Tr. 400. There was increased warmth in her left ankle in November 2006. Tr. 451. In January 2007, Plaintiff requested (so that she could get her bills paid) that Dr. Moyd provide her with a note stating that she had been out of work with gout problems. Tr. 447.

Plaintiff also complained to Dr. Moyd of back pain and sciatica. In December 2004, she reported radiating back pain. Tr. 368. She sought treatment in the emergency room for an irritation to her sciatic nerve after a fall in March 2005. Dr. Moyd, on a follow up appointment, noted that Plaintiff reported feeling better since her treatment in the ER. He assessed sciatica and directed her to continue the Flexeril and Tylenol # 3 prescribed in the ER. Tr. 361. Plaintiff did not seek treatment for her back again until approximately six months later (in September 2005), at which time Dr. Moyd assessed spinal stenosis and recommended physical therapy. Tr. 354.

In November 2005, Plaintiff complained of chronic low back pain with pain shooting into her right leg. Dr. Moyd noted that Plaintiff had complaints of this since at least 2002 and that an MRI of her spine had showed L4-L5 stenosis, but no herniated disc that he could recall. He wrote that she was in no apparent distress, moved a bit slowly, and favored her right side. He assessed right-sided sciatica and spinal stenosis, referred her to PeeDee Orthopedics, and refilled her prescription for Lortab for pain. Tr. 350-351.

4

In February 2006, Plaintiff requested and received a letter from Dr. Moyd stating that she could not stand for more than three hours because of her sciatica. Dr. Moyd noted that Plaintiff walked without much of a limp. Tr. 373. In October 2006, Plaintiff complained of 8/10 pain in her back and legs. Tr. 394. She reported back pain again in May 2007. Tr. 440.

Plaintiff reported frequent urination to Dr. Moyd in April 2005, August 2005, September 2005, and May 2006. Tr. 352, 357, 359, 404. He noted that she had a history of urethral strictures. Tr. 354. In November 2005, Dr. Moyd assessed chronic bladder fullness and noted that Plaintiff had seen a specialist in the past for urethral dilation. He recommended waiting to pursue another such procedure until her back pain resolved. Tr. 350. In May 2006, Dr. Moyd referred Plaintiff to urologist Dr. Zubel for chronic urinary frequency. Tr. 404. In June 2006, he noted that she was noncompliant with her diabetes medication and that her chronic urinary frequency was likely due to her chronically elevated blood glucose. Tr. 402. Plaintiff reported the need to urinate every two hours in January 2008. Tr. 473.

Plaintiff was diagnosed with irritable bowel syndrome ("IBS") in August 2005 and January 2006. Donnatal was prescribed to be used on an as-needed basis. Tr. 356-357, 380.

Plaintiff was followed at the Free Medical Clinic from April 2004 to December 2004. She was treated for diabetes, hypertension, yeast infections, gout, and urinary frequency. Tr. 233-246.

Plaintiff received treatment from specialists for kidney problems. In a letter dated August 31, 1998, Dr. Sompong Kraikit, a nephrologist, stated that Plaintiff's problems with renal function were likely secondary to diabetic nephropathy. He recommended that Plaintiff lose weight and try to get better control of her diabetes and hypertension. Tr. 270.

Plaintiff was treated for renal insufficiency and hyperkalemia (elevated potassium in the blood) at the McLeod Regional Medical Center in September 2004. She reported a history of diabetes and hypertension for about fourteen years. She said that she had been unemployed for the past two weeks, but that she occasionally babysat. An MRI revealed no renal artery stenosis and that her right kidney was smaller than her left kidney. Tr. 210-216, 262, 268.

Dr. Brijendra Gupta, a nephrologist, wrote a letter in November 2004 opining that Plaintiff's hypertensive/diabetic nephropathy was the likely cause of her renal insufficiency. It was recommended that Plaintiff lose weight and exercise regularly. Tr. 266. Plaintiff did not show up for her January 2005 appointment. Tr. 265. In March 2005, Dr. Gupta wrote that Plaintiff complained of back pain and urinary incontinence, but denied other problems. Dr. Gupta noted that Plaintiff's renal function had improved in the previous three months and that her blood pressure was stable. Tr. 263.

In September 2006, a repeat MRI of Plaintiff's kidneys was normal. Tr. 419-421. Examinations by Dr. Wen-Ting Ouyang in October 2006, December 2006, February 2007, May 2007, and November 2007 revealed no complaints and that Plaintiff had no to only mild swelling of her lower extremities. Tr. 437-439, 459-460. On November 14, 2007, Dr. Ouyang assessed Plaintiff's chronic kidney disease as stable. Tr. 460.

On December 6, 2005, Plaintiff was examined at Pee Dee Orthopaedic Associates. She complained of severe, sharp, stabbing pain in her lower back that radiated down her legs; some numbness and tingling in her foot; and 10/10 pain. Examination revealed normal strength and sensation in Plaintiff's lower extremities. X-rays showed endplate spurring, multi-level disc space narrowing, and spondylolisthesis. The diagnoses were chronic lower back pain, degenerative

6

disc/joint disease ("DDD") of the lumbar spine, and Grade I spondylolisthesis of L4 on L5. Physical therapy and an electrodiagnostic evaluation to rule out lumbar radiculopathy were recommended. Tr. 331-332.

## **HEARING TESTIMONY**

At the hearing, Plaintiff stated that most of her problems were with back pain and arthritis. Tr. 54. She also mentioned experiencing frequent urination. Tr. 44, 56. Plaintiff testified that she experienced back pain daily that ran from her upper back and produced sharp pain in her hips. Tr. 48. Her pain pills reduced her pain to a level that she "[felt] pretty much like [her]self." Tr. 50. Plaintiff stated that she took prescription pain reliever (Lorcet) and reported taking Tylenol about every other day. Tr. 50-51. She reported that she used to experience sciatic pain five times per month, but at the time of the hearing was experiencing this pain less often than previously. Tr. 48-49. Plaintiff stated that her back pain was exacerbated with bending and stooping and she could not stand very long because of her pain. Tr. 47, 52.

Plaintiff testified that her hypertension was well-controlled on medication. Tr. 60. When asked if she had difficulty keeping her diabetes under control, she testified that she did at one time, but now had it under control with medication. Tr. 46. She said her renal function was now relatively stable. Tr. 56. Plaintiff complained that she experienced swelling in her feet and ankles about once a week due to gout and arthritis. Tr. 45. She said that she had difficulty holding her urine and used the bathroom about once every hour. Tr. 44.

As to daily activities, Plaintiff stated that she drove about four days per week to shop or attend church. Tr. 36-37. Her niece drove her to the hearing and they drove straight without stopping for 25-30 minutes. Tr. 36. Plaintiff reported that she could generally wash and dress herself and take

care of her personal needs. Tr. 37-38. She reported that her daughter did most of the housework, but she did some cooking, laundry, and grocery shopping. Tr. 38, 54.

On an average night, Plaintiff reportedly slept about eight hours. During the day, she read books for about 30 minutes at a time, walked in the yard, sat on the porch, laid in bed and took a nap, talked with her daughter, and folded clothes. Plaintiff stated that she could only sit for about one hour, then she had to lie down. She said she was able to stand for 25-30 minutes at a time and could walk for about one hour at a time. Tr. 52-55.

Plaintiff testified that her last job was working on and off for about one year as a nurse on call. Her work in the prior fifteen years consisted primarily of nursing jobs. Tr. 38-40. Plaintiff reported selling life insurance as a part-time second job. She testified that she would probably be capable of selling life insurance, but would have problems with her feet swelling from gout. She also thought that her swollen feet would inhibit her ability to drive. Tr. 42-43.

## **DISCUSSION**

Plaintiff alleges that the ALJ erred by: (1) failing to consider whether a number of her impairments were severe and to properly consider her combination of impairments; (2) failing to properly consider the effects of her obesity; (3) failing to properly evaluate the opinion of her treating physician (Dr. Moyd); (4) improperly determining that she had the residual functional capacity ("RFC") for light work and could perform her past relevant work as an insurance salesperson; (5) failing to find that she was disabled under the medical-vocational guidelines (the

"Grids"), and (6) posing an improper hypothetical to the VE. The Commissioner appears to argue that the ALJ's decision is free of legal error and supported by substantial evidence.[1]

### A. **Severe Impairments**

Plaintiff alleges that the ALJ erred in not finding that her IBS, urinary frequency, fatigue, edema, and sciatica were severe impairments. The Commissioner contends that the ALJ properly determined that Plaintiff's IBS and urinary frequency were not severe impairments; properly considered Plaintiff's fatigue and edema, which are symptoms or signs of impairments, not impairments themselves; and properly considered her sciatica by considering her severe back impairments of DDD and osteoarthritis. Additionally, the Commissioner contends that the ALJ properly considered all of the evidence in making his RFC finding.

It is the claimant's burden to show that he had a severe impairment. See Bowen v. Yuckert, 482 U.S. 137, 145 n. 5 (1987). A non-severe impairment is defined as one that "does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). "Basic work activities" means:

The abilities and aptitudes necessary to do most jobs. Examples of these include –

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2) Capacities for seeing, hearing, and speaking;

---

[1]Substantial evidence is:
evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

     (3) Understanding, carrying out, and remembering simple instructions;
     (4) Use of judgment;
     (5) Responding to supervision, co-workers and usual work situations; and
     (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b). An impairment is "not severe" or insignificant only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984).

  Here, the ALJ properly considered Plaintiff's impairments of urinary frequency and IBS and determined that they were not severe impairments. As noted by the ALJ, Plaintiff has a history of IBS, but has not had the symptoms "with such frequency, severity, or duration [for it] to be considered a severe impairment." Tr. 13. Plaintiff has not shown that her IBS or urinary frequency lasted for a continuous period of 12 months. See 20 C.F.R. § 404.1509. Plaintiff received treatment for IBS in August 2005 and January 2006, but not thereafter. See Tr. 356, 357, 380. She complained of urinary frequency on occasion, but other times reported no complaints. See Tr. 409, 437, 438, 439, 459, 460. As noted by the ALJ, Plaintiff has been able to hold her urine without incidents of incontinence and the evidence does not show a need to wear adult diapers. Tr. 13. No physician placed any limitations on Plaintiff because of her reported IBS or urinary frequency. See Lee v. Sullivan, 945 F.2d 687, 692 (4th Cir. 1991)(claimant's allegation that he had to recline or lie down several times a day was discounted because no physician suggested that the claimant's condition required such reclining). Dr. Moyd, Plaintiff's only treating or examining physician to provide an opinion, opined that Plaintiff was disabled (discussed further below), but did not reference either IBS or urinary frequency as contributing factors. See Tr. 396.

Plaintiff alleges that she has severe impairments of fatigue and edema. These, however, are considered symptoms or signs of impairments rather than impairments themselves. Symptoms, signs, and laboratory findings are the bases for finding an impairment. 20 C.F.R. § 404.1508. Fatigue was reported by Plaintiff on occasion (see Tr. 210, 268), but it is a symptom, not a medically determinable impairment. See 20 C.F.R. §§ 404.1528(a) and 404.1529(b)(noting that symptoms such as fatigue "will not be found to affect your ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present."). Edema is a sign of an impairment. A sign is an anatomical or physiological abnormality that can be observed apart from a reported symptom and is shown by medically acceptable diagnostic techniques. 20 C.F.R. 404.1528(b). Further, the ALJ properly noted and considered these signs and symptoms in making his RFC finding. See Tr. 15-16, 18-19.

Although the ALJ did not explicitly discuss the impairment of sciatica, he properly considered the limitations of this impairment by considering Plaintiff's severe back impairments of DDD and osteoarthritis. See Tr. 12-21. These back impairments encompass the same limitations as Plaintiff's sciatica, were frequently diagnosed in combination with sciatica (see Tr. 322, 326, and 350), and resulted in similar exertional limitations. Plaintiff has not asserted any additional limitations resulting from her sciatica. The ALJ also properly considered all of Plaintiff's severe and non-severe impairments in determining that Plaintiff did not meet or medically equal one of the Listings of impairments. See Tr. 13.

**B.** **Obesity**

Plaintiff alleges that the ALJ erred by failing to comply with SSR 02-1p in considering the impact of her obesity on her ability to work. She argues that obesity alone can be medically equal

to a listed impairment. The Commissioner contends that the ALJ explicitly considered Plaintiff's obesity and Plaintiff does not point to any specific limitations or exacerbations caused by her obesity.[2]

Here, the ALJ found that Plaintiff's obesity was a severe impairment (Tr. 12) and explicitly considered this impairment throughout his analysis as required by SSR 02-1p. He specifically found that:

> [t]he evidence shows that the claimant has a history of obesity. Her height is 5'5", and her weight has ranged throughout the relevant period from approximately 230 pounds to 261 pounds. I have fully considered the claimant's obesity as it may impact her musculoskeletal problems, intermittent gout flare-ups, as well as her other medical conditions. I have also fully considered how her obesity combined with her other impairments affect her residual functional capacity.

Tr. 15. Plaintiff has not asserted any additional or exacerbated limitations caused by her obesity in combination with her other impairments, despite the burden of proof for her to do so.

### C.     Treating Physician

Plaintiff asserts that the ALJ failed to properly analyze Dr. Moyd's September 2006 opinion. She argues that this opinion should have been given great weight because Dr. Moyd treated Plaintiff for many years; consulted with other specialists; and consistently tried different medications to try

---

[2]Pursuant to SSR 02-1p, the ALJ must consider a claimant's obesity in making a number of determinations, including whether the individual has a medically determinable impairment, the severity of the impairment, whether the impairment meets or equals the requirements of a listed impairment, and whether the impairment prevents the claimant from performing her past relevant work or other work in the national economy. When assessing a claimant's RFC, the ALJ is to consider the "effect obesity has upon the [claimant's] ability to perform routine movement and necessary physical activity within the work environment" as the "combined effects of obesity with other impairments may be greater than might be expected without obesity." SSR 02-1p, 2000 WL 628049, at *3 and *6.

to control Plaintiff's diabetes, hypertension, chronic renal insufficiency, gout, edema, gouty arthritis, and spinal stenosis. In a office note dated September 29, 2006, Dr. Moyd wrote:

> The patient [has] hypertension and diabetes and impending renal failure. Possible dialysis in the near future. At this point given her multiple medical problems [including] lumbosacral spinal stenosis, gouty arthritis, chronic dysuria, hiatal hernia, eczema, high cholesterol, renal insufficiency, and anemia, I just do not think she can hold down her job any longer. I do not think she can maintain a gainful employment for any length of time. I, therefore, think she is now 100% disabled. Hopefully, if she gets better in the future, she can always rejoin the workforce. She can certainly still go to school for her coding class if she wishes even when she is on disability. The patient was pleased to hear this, as she says she really wants to go to school.

Tr. 396. The Commissioner contends that the ALJ properly assigned less weight to Dr. Moyd's opinion because it was a conclusory statement about the legal issue of disability and was not supported by the evidence.

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. § 416.927(d)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro v. Apfel, 270 F.3d at 178 (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992)).

Under § 404.1527, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors to determine the weight to be afforded the physician's opinion: (1) the length of the treatment relationship and the frequency of examinations;

13

(2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527. Social Security Ruling 96-2p provides that an ALJ must give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p.

The ALJ's decision to discount the opinion of Dr Moyd is supported by substantial evidence and correct under controlling law. As noted by the ALJ, this opinion of disability is not consistent with Dr. Moyd's own findings. See Tr. 20. Dr. Moyd noted in May 2004 that Plaintiff's daily activities including driving, cooking, and cleaning the house. Tr. 339. On February 21, 2006, Dr. Moyd wrote that Plaintiff could not stand up for more than three hours because of sciatica. In his progress notes from that day, however, he noted that Plaintiff was in no apparent distress and was walking down the hall without too much of a limp. He also noted she was not compliant with her medications. Tr. 373. In the same opinion where Dr. Moyd opined that Plaintiff was disabled from working, he also stated that Plaintiff could go to school for coding classes. Tr. 396. On February 21, 2007, an examination of Plaintiff's back and neurological system was unremarkable and Dr. Moyd noted that Plaintiff did not have any swelling to her extremities and did not have any problems ambulating. On May 16, 2007, Plaintiff reported to Dr. Moyd that she was exercising seven times a week. Tr. 440.

Records from other physicians also contradict Dr. Moyd's opinion that Plaintiff was "100% disabled." In November 2004, Dr. Gupta encouraged Plaintiff to exercise on a regular basis. Tr. 266. In the emergency room on January 27, 2008, Plaintiff complained of back pain, but it was noted that she was able to ambulate independently and was able to perform all activities of daily living

14

without assistance. Physical examination revealed full range of motion of her back, full range of motion of all extremities without tenderness, normal motor and sensory functioning, and the ability to move her extremities equally and with full strength. Plaintiff denied having any numbness or tingling in her extremities. Tr. 464, 468.

The ALJ also noted that Plaintiff's statements and her testimony regarding her subjective symptoms were inconsistent, and many of her statements indicated a much higher level of functioning than reflected in Dr. Moyd's opinion of disability. Additionally, the ALJ was not bound by Dr. Moyd's conclusory opinion of disability (that Plaintiff was "100% disabled") since the issue of disability is the ultimate issue in a Social Security case and the issue is reserved for the Commissioner. See 20 C.F.R. § 404.1527(e)(1); Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027 (10th Cir. 1994); see also Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002)(statements that a claimant could not be gainfully employed are not medical opinions, but opinions on the application of the statute, a task assigned solely to the discretion of the Commissioner); King v. Heckler, 742 F.2d 968 (6th Cir. 1984); Montijo v. Secretary of Health & Human Servs., 729 F.2d 599, 601 (9th Cir.1984).

### D. **Past Relevant Work/RFC**

Plaintiff argues that the ALJ erred in concluding that she could return to her past relevant work as an insurance salesperson because the ALJ provided no specific findings or analysis regarding the physical and mental demands of this work as required by SSR 82-62. The Commissioner contends that the ALJ properly complied with SSR 82-62 by stating Plaintiff's RFC with specificity and obtaining VE testimony.

Social Security Ruling 82-62 requires the ALJ to determine the following when evaluating whether a claimant can perform her past relevant work:

1. A finding of fact as to the individual's RFC.
2. A finding of fact as to the physical and mental demands of the past job/occupation.
3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

Here, the ALJ satisfied the first requirement of SSR 82-62 by stating Plaintiff's RFC with specificity. He specifically found that Plaintiff had the RFC to lift and carry up to twenty pounds occasionally and ten pounds frequently; occasionally stoop, twist, crouch, kneel, crawl, and balance; and occasionally climb stairs, ramps, ladders, ropes, and scaffolds. Tr. 17. At the hearing, he specifically stated that these restrictions came primarily from the findings contained in the reports of the state agency physicians. See Tr. 38-39. The ALJ's RFC is supported by the findings of the state agency physicians. See 20 C.F.R. § 404.1527(f)(2) and 416.927(f)(2); SSR 96-6p ("Findings of fact made by State agency ... [physicians and psychologists]... regarding the nature and severity of an individual's impairments must be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review."). In April 2006, Dr. Eloise Bradham, a state agency physician, reviewed Plaintiff's medical records and opined that Plaintiff could lift twenty pounds occasionally, lift ten pounds frequently, stand/walk for six hours during an eight-hour day, and sit for six hours during an eight-hour day. Tr. 383. In November 2006, Dr. James Weston, a state agency physician, opined that Plaintiff could lift ten pounds occasionally; lift ten pounds frequently; stand/walk for six hours during an eight-hour day; sit for six hours in an eight-hour day; and was limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling. Tr. 428-433.

The ALJ met the second requirement by asking the VE about the demands of Plaintiff's past relevant work as an insurance salesperson. The Commissioner may employ the services of a VE at step four of the sequential evaluation process to help determine whether a claimant can perform his past relevant work. See 20 C.F.R. §§ 404.1560, 416.960. The VE stated that the position of insurance sales agent is light and skilled. The VE specifically stated that this work is described as such under the Dictionary of Occupational Titles ("DOT") at 250.257-010.[3] The ALJ met the third requirement by asking the VE if a claimant with the RFC as noted above could perform the work of insurance sales agent as described by the VE. The VE stated that such an individual could perform the work of the insurance sales agent. Tr. 66.

### E. Grids/Hypothetical to VE

Plaintiff argues that the ALJ should have relied on the Grids, under Rule 201.14 (a person of advanced age with a high school education, limited to sedentary work, with no transferable work skills), to find that she was disabled. She also argues that the ALJ erred in not posing a proper hypothetical question to the VE.[4] Specifically, Plaintiff claims that the hypothetical was defective because it did not take into account all of her severe and non-severe impairments. The Commissioner

---

[3]This DOT number provides that the physical and mental demands of the job include exerting up to twenty pounds of force occasionally and/or up to ten pounds of force frequently. Climbing, balancing, stooping, kneeling, crouching, and crawling are "Not Present" in this job. DOT 250.257-010.

[4]Plaintiff also argues that the ALJ failed to comply with Grid Rule 201.00(f) by obtaining VE testimony as to the degree of vocational adjustment that would be required to utilize transferable skills. The cited rule, however, applied to an individual of advanced age who has an RFC for sedentary work. Here, as discussed above, the ALJ found that Plaintiff had the RFC for light work. Thus, Grid Rule 201.00(f) is not applicable.

17

argues that the ALJ properly relied on the testimony of the VE rather than the Grids in making his step five finding because the ALJ found that Plaintiff could perform a range of light work.

Contrary to Plaintiff's argument, the ALJ was not required to find that Plaintiff was disabled under the Grids because the ALJ found at step four[5] that Plaintiff could return to her past relevant work as an insurance salesperson. The ALJ also made an alternative finding that Plaintiff was not disabled at step five because she could perform other work existing in significant numbers in the national economy. The ALJ could properly rely on the Grids as a framework for finding that Plaintiff was not disabled. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, §200.00(e)(2).[6] As Plaintiff was not capable of the full range of light work because of her postural limitations, the ALJ properly sought the testimony of a VE. See SSR 83-14 (where a claimant can perform light exertional work, but has other non-exertional impairments, such as postural limitations, a decisionmaker will often require testimony from a VE); Hammond v. Heckler, 765 F.2d 424, 425-426 (4th Cir. 1985).

---

[5]In evaluating whether a claimant is entitled to disability insurance benefits, the ALJ must follow the five-step sequential evaluation of disability set forth in the Social Security regulations. See 20 C.F.R. § 404.1520. The ALJ must consider whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to her past work, and (5) if not, whether the claimant retains the capacity to perform specific jobs that exist in significant numbers in the national economy. See id. The burden of proof and production rests on the claimant during the first four steps, but shifts to the ALJ on the fifth step. See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

[6]The ALJ cited Grid Rule 202.15 as the framework for his analysis. This rule applies to persons closely approaching advanced age (age 50-54), which was Plaintiff's age category at the time she alleges she became disabled. At the time of the ALJ's decision, Plaintiff was 58 years old, placing her in the category of persons of advanced age, such that Grid Rule 202.07 is applicable. Under either rule, however, a claimant with a high school education, who could perform light skilled or semi-skilled work, and who had transferable skills, would be found not disabled under the Grids. The ALJ specifically found that Plaintiff had transferable skills. See Tr. 65.

Plaintiff argues that the ALJ posed a defective hypothetical to the VE because he did not include all of Plaintiff's sever and non-severe impairments. In order for a VE's opinion to be relevant or helpful, it must be based upon a consideration of all the other evidence on the record and must be in response to hypothetical questions which fairly set out all of the plaintiff's impairments. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). The questions, however, need only reflect those impairments that are supported by the record. Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987).

Here, the ALJ was not required to include additional limitations proposed by Plaintiff's counsel because the ALJ did not find these limitations to be credible and/or supported by the record. See Lee v. Sullivan, 945 F.2d 689, 698-94 (4th Cir. 1991)(noting that a requirement introduced by claimant's counsel in a question to the VE "was not sustained by the evidence, and the vocational expert's testimony in response to the question was without support in the record."); Chrupcala, supra.

## **CONCLUSION**

Despite Plaintiff's claims, she fails to show that the Commissioner's decision was not based on substantial evidence. This Court may not reverse a decision simply because a plaintiff has produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered de novo, a different result might be reached.

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, Richardson v. Perales, supra. Even where a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, Blalock v. Richardson, supra. The Commissioner is charged with resolving conflicts in the evidence, and this

19

Court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively v. Heckler, supra. It is, therefore,

>RECOMMENDED that the Commissioner's decision be **affirmed**.

>Joseph R. McCrorey
>United States Magistrate Judge

July 27, 2010
Columbia, South Carolina